THE LAW OFFICES OF
**KELLY G. BLACK, PLC**

1152 E Greenway St, Ste 4
Mesa, AZ 85203-4360
P 480-639-6719
F 480-639-6819
kgb@kellygblacklaw.com
Attorneys for Garrett Harrison and Kiresten Harrison
By: Kelly G. Black, No. 016376

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| In re: | **No. 2:11-bk-06877-GBN** |
|---|---|
| **Garrett Harrison and Kiresten Harrison,** | Chapter 11 Proceedings |
| Debtors | **Chapter 11 Plan of Reorganization** |
| | Assigned to: Honorable George B. Nielsen Jr. |

**I.  Summary**

1.1  This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankrutpcy Code (the "Code") proposes to pay creditors of Debtors Garrett Wade Harrison and Kiresten Kei Harrison, (the "Debtors," or "Debtors-in-Possession"), from future income.

1.2  All creditors and equity security holders should refer to the provisions of this Plan for information regarding the precise treatment of their claims. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**II.  Commitment and Payment of Income and Property**

2.1  *Regular Income Committed*. From future income or other sources, Debtors shall commit to the Plan the monthly sum of $2,756.50 beginning on the 1st day of the first month following the effective date of this Plan and continuing for 120 months after the effective date. After month 120, Debtors shall commit to the Plan the monthly sums required to maintain the payments provided under Section 3.4 if that claim remains unsatisfied.

2.2  *Property Committed*. Debtors shall also commit to the Plan a sum sufficient to make the payments required by Sections 3.1 and 3.5.

2.3  *Commitment of Additional Property*. At any time, Debtors may pre-pay the amounts committed under Sections 2.1 and 2.2 from any source, including future income and property liquidated for distribution.

2.4  *Priority of Payments*. Except as this Plan expressly states provides to the contrary, the Debtors will apply any income or property committed to the Plan *first* to satisfy any payment described in Articles III and IV as due on the effective date; *second* to satisfy any minimum payment described in Articles III and IV as falling due after the effective date; *third* to satisfy

any remaining cure obligation described in Article IV; and *fourth* to satisfy in full all remaining claims or interests in the order in which they appear in Articles III and IV.

## III. Treatment of Classes of Claims and of Unclassified Claims

3.1  **Unclassified Priority Group 1.**  Each administrative expense claim, to the extent allowed under § 503(b) of the Code, together with any fees and charges assessed against the estate under Chapter 123 of title 28, with priority under § 507(a)(2) of the Code. Under the terms of § 1123(a)(1), such claims are not in classes. Claims with this priority group may include those described below:

3.1.1  *United States Trustee Fees*. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

3.1.2  *Preserving the Estate*. Claims for the actual, necessary costs and expenses of preserving the estate allowed under § 503(b)(1)(A), which may include but are not limited to:

   i.  certain post-petition compensation and labor awards;
   ii. certain post-petition torts by the debtors-in-possession or trustee;
   iii. certain environmental claims;
   iv. certain post-petition unsecured debt; and
   v.  certain post-petition obligations related to leases and executory contracts.

3.1.3  *Certain Post-Petition Taxes*. Claims for certain post-petition taxes and penalties described in § 503(b)(1)(B-D). Such claims may include income taxes generated post-petition from services or from property of the estate, and may also include property taxes for the tax year following the year in which the bankruptcy petition was filed.

3.1.4  *Compensation of Officers and Professionals*. Claims for compensation and reimbursement of officers of the estate or professionals employed and awarded under § 330(a) of the Code, or otherwise awarded under § 503(b)(2-6,8).

3.1.5  *Certain Rejection Damages*. Certain claims by landlords under nonresidential real property leases rejected after previous assumption and allowed under § 503(b)(7).

3.1.6  *Certain Goods*. Claims for the value of certain goods received by the Debtors within 20 days before the Petition Date and allowed under § 503(b)(9).

3.1.7  *FRB Loans*. Unsecured claims of a Federal reserve bank, to the extent allowed with priority under § 507(b)(2).

The holder of the following claims within this group will be paid in full on the effective date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors: (1) United States Trustees Fees; (2) Claims for post-petition taxes and penalties described in § 503(b)(1)(B-D); and (3) Compensation and reimbursement of Jackson White, P.C. and Kelly G. Black, PLC. No other claim within this group will be paid and, except as provided in § 503(b)(1)(D), no claim within this group will be paid unless a motion and notice for allowance of the claim is filed and served on or before the effective date and the claim is thereafter allowed by the court.

Claims within this group are not entitled to cast a ballot.

3.2  **Unsecured Priority Group 2.**  *Priority Tax Claims*. Each unsecured tax claim of a governmental unit, to the extent allowed with priority under § 507(a)(8).

The holder of a claim allowed within this group will be paid the full amount of the allowed claim, with interest from the date the claim arose at the rate required by 11 U.S.C. § 511, in cash payments beginning the thirtieth day after satisfaction of all claims with higher priority under this Plan and amortized in equal monthly installment payments through the fifth anniversary of the date of the order for relief.

Claims with this priority include:

3.2.1  Proof of Claim 5, filed by the Internal Revenue Service. The validity of this claim is not admitted, and may be the subject of a claims objection and motion under 11 U.S.C. § 505. If allowed as filed, the principal portion of the priority claim, in the sum of $7,867.00, will be paid with interest at the fixed rate of 3.22% per annum in 32 monthly installments of $256.88. The interest portion of the priority claim, in the sum of $1,117.08, will be paid without interest in 32 monthly installments of $34.91. Payments shall begin by July 16, 2013. Payments accruing before the effective date of the Plan shall be made on the effective date of the Plan.

3.2.2  Proof of Claim 2, filed by the Arizona Department of Revenue. The validity of this claim is not admitted, and will be the subject of a claims objection and motion under 11 U.S.C. § 505. If allowed as filed, the Plan is not feasible. If allowed in an amount which makes the Plan feasible, the priority claim will be paid with interest at the fixed rate of 3.00% per annum in cash payments beginning the thirtieth day after satisfaction of all claims with higher priority under this Plan and amortized in equal monthly installment payments through the fifth anniversary of the date of the order for relief.

3.3  **Class 3.**  *General Unsecured Non-Priority Claims*. All other unsecured claims allowed under § 502 of the Code.

The holder of a claim allowed within this class will be paid a pro rata share of $22,000.00, in cash payments beginning the thirtieth day after satisfaction of all unsecured claims with higher priority under this Plan and divided in equal monthly installment payments continuing through month 120 after the effective date.

This class is impaired and is entitled to cast a ballot.

3.4  **Class 4.**  The claim of The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificate Holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2004-12, Mortgage Pass Through Certificates, Series 2004-12, filed as Proof of Claim 22 and scheduled under the name "Bac Home Loans Servici" at Docket 13, p. 9, account number xxxx6663, secured by a deed of trust recorded with the Maricopa County Recorder on April 22, 2004 at 2004-0433069, with the related assignment recorded March 14, 2012 at 2012-0212519, against the following described property:

18525 E. Purple Sage Drive
Queen Creek, AZ 85242,

more fully described as:

Lot 96, Parcel G at Sossaman Estates, according to Book 585 of Maps, Page 1, records of Maricopa County, Arizona

APN:  304-68-888,

to the extent allowed as a secured claim.

Debtors value the collateral at $264,300.00.

This claim and lien shall be treated as follows:

**Option 1**

If the holder of the Class 4 claim accepts this plan and fails to elect Option 2, the treatment set forth herein shall apply.

*Allowance of Claim.* The claim will be allowed as a secured claim in the amount of $342,188.01. The secured claim shall consist of the following elements:

1. Principal in the amount of $298,905.73, with interest thereon from May 1, 2013 at the fixed rate of 4.5% per annum through January 1, 2015 and at the rate of 5% from January 1, 2015. Debtors shall make payments in the following amounts:

    a. $1,835.64 per month beginning June 1, 2013 and continuing through and including January 1, 2015;

    b. $1,912,65 per month beginning February 1, 2015 and continuing for 99 months through and including April 1, 2023; and

    c. A final payment in the aum of $195,804.81 on May 1, 2023,

    unless earlier paid.

    These payments shall be applied first to interest accruing on principal from May 1, 2013 and then to principal.

2. Ongoing escrow payments in a sum sufficient to satisfy insurance and property taxes payable after May 1, 2013; until the parties agree or the Court determines otherwise, these escrow payments shall be in the monthly amount of $405.67;

3. Payment of amounts necessary to cure defaults arising before May 1, 2013 which shall be allowed in the following amounts:

    a. Escrow payments accrued from February 1, 2011 to May 1, 2013 in the sum of $14,135.24;

    b. Interest accrued from February 1, 2011 through May 1, 2013 in the sum of $29,147.04; and

    c. Fees asserted in the proof of claim in the sum of $2,405.47 shall be disallowed.

Debtors shall pay these sums on or before May 1, 2023.

**Option 2**

If the holder of the Class 4 claim fails to accept this plan, or accepts this plan and elects this Option 2, the treatment set forth herein shall apply.

*Allowance of Claim.* The claim will be allowed as a secured claim in the amount of $342,188.01. The secured claim shall consist of the following elements:

4. Principal in the amount of $298,905.73, with interest thereon from May 1, 2013 at the fixed rate of 4.5% per annum through January 1, 2015 and at the rate of 5% from January 1, 2015. Debtors shall resume making monthly payments beginning June 1, 2013 in the amounts currently required by the loan documents:

    a. $1,729.84 through and including January 1, 2015;

    b. $1,802.42 beginning February 1, 2015 and continuing until paid in full on or before the maturity date, May 1, 2034.

   Debtors shall increase these payments by $105.80 and $110.23 respectively to reinstate the maturity date. The combined principal and interest payments Debtors shall make each month beginning June 1, 2013 as as follows:

    c. $1,835.64 through and including January 1, 2015;

    d. 1,912,65 beginning February 1, 2015 and continuing until paid in full on or before the maturity date, May 1, 2034.

   These payments shall be applied first to interest accruing on principal from May 1, 2013 and then to principal.

5. Ongoing escrow payments in a sum sufficient to satisfy insurance and property taxes payable after May 1, 2013; until the parties agree or the Court determines otherwise, these escrow payments shall be in the monthly amount of $405.67;

6. Payment of amounts necessary to cure defaults arising before May 1, 2013 which shall be allowed in the following amounts:

    a. Escrow payments accrued from February 1, 2011 to May 1, 2013 in the sum of $14,135.24;

    b. Interest accrued from February 1, 2011 through May 1, 2013 in the sum of $29,147.04; and

    c. Fees asserted in the proof of claim in the sum of $2,405.47 shall be disallowed.

   Debtors shall pay these sums by making monthly cure payment in the amount of $181.30, which shall be applied first to cure escrow payments, then accrued interest, then any fees which may be allowed.

**Either Option 1 or Option 2**

The following shall apply under either Option 1 or Option 2:

*Lien.* Until payments are completed under this Plan, this class shall maintain its pre-petition lien, limited to the amount of the allowed secured claim. Upon payment in full of the payments provided for this class, Debtors shall be entitled to a release of all pre-petition, post-petition and post-confirmation liens.

*Default*. A default with respect to this class shall not constitute a default under the plan with respect to any other class or party in interest.

*Pre-Payment*. Debtors will have the right to prepay this secured claim without penalty at any time.

This class is impaired and is entitled to cast a ballot.

3.5 **Class 5.** The claim of Sossaman Estates Homeowners Association, filed as Proof of Claim 9 and scheduled under the name "Sossaman Estates" at Docket 13, p. 9, secured by a homeowners association lien against the property described in Section 3.4, to the extent allowed as a secured claim. A Notice and Claim of Lien was recorded August 13, 2007 in the records of the Maricopa County Recorder at 2007-0907300; the notice references a Declaration of Covenants, Conditions and Restrictions recorded September 11, 2001 at 2001-0836393 (the "CC&Rs").

Debtors value the collateral at $264,300.00.

This claim and lien shall be treated as follows:

*Allowance of Claim*. The holder of this claim will be allowed no pre-petition secured claim, a pre-petition unsecured claim in the amount of $9,217.61, a secured post-petition claim in the amount of $2,067.00 through May 31, 2013, and such further secured post-petition claim for periods beginning June 1, 2013 as may be established by stipulation or motion filed before the effective date, less payments made after the date this plan is filed. The treatment of the unsecured claim is not provided for in this class, but in the section addressing unsecured claims.

*Pre-Petition Lien*. The lien will be released with respect to pre-petition claims only. The Lis Pendens recorded June 28, 2010 in the records of the Maricopa County Recorder at 2010-0544901 by Sossaman Estates Homeowners Association, together with any proceedings in *Sossaman Estates Homeowners Association v. Harrison*, Maricopa County Superior Court No. CV2010-020330 shall be void and of no further effect.

*Post-Petition Lien*. The holder of this claim will retain any lien rights it may have under the with respect to the allowed secured post-petition claim. Allowed post-petition claims accruing on or before the effective date of the plan will be paid in ten monthly installments in the minimum sum of $206.70 beginning thirty days after the effective date until paid in full.

This class is impaired, and a holder of a claim within this class is entitled to cast a ballot. In the event that the pre-petition claim is found to be wholly or partially secured, the secured claim and lien shall be treated in the manner provided in paragraph 3.4.

3.6 **Class 6.** *Debtors' Interests*. The interests of the individual Debtors in property of the estate.

Except as specifically stated in the Plan, Debtors shall retain all of their legal and equitable interests in exempt and non-exempt assets of this estate, including income, free and clear of all claims and interests. All estate property shall vest in Debtors at confirmation.

**IV. Assumption and Rejection of Leases and Executory Contracts**

4.1 *Assumed Executory Contracts and Unexpired Leases*. The Debtors assume the following executory contracts and/or unexpired leases effective upon the effective date: None.

4.2     Upon the effective date of this Plan, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed in this Article IV, unless separately assumed on motion filed after the filing of this Plan and before the date of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## V. Allowance and Disallowance of Claims

5.1     *Disputed Claim*. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

5.2     *Delay of Distribution on a Disputed Claim*.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3     *Settlement of Disputed Claims*.  The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.4     *Administrative and Lease Rejection Claims*. Administrative claims are governed by Section 3.4 of this Plan. Claims relating to rejected leases are governed by Section 4.2 of this Plan.

5.5     *Allowance and Disallowance of Secured Claims*. Confirmation of the Plan will result in the allowance and disallowance of specific claims of secured claims as provided in Sections 3.4-3.5. If not there allowed, secured claims will be disallowed and any related lien released as provided in Article VI. **You are advised to review these provisions to identify your claim and determine whether and how it will be allowed and treated under the Plan.**

## VI. Means for Implementation of the Plan

6.1     *Retention of Property of the Estate*. Except as specifically stated in the Plan, Debtors shall retain all of their legal and equitable interests in exempt and non-exempt assets of this estate, including income, free and clear of all claims and interests. For purposes of § 1141(c), all estate property shall be deemed "dealt with by the plan." All estate property shall vest in Debtors at confirmation.

6.2     *Transfer of Property of the Estate*. After confirmation, Debtors may transfer property of the estate. Each transfer shall be subject to the Debtors' respective obligations under the allowed secured claims and liens, as modified in this Plan.

6.3     *Satisfaction and Modification of Liens*. Liens against property of the estate shall be satisfied and modified on Debtors' compliance with the relevant terms of Articles III and IV. Any lien which is wholly unsecured shall be deemed released upon confirmation of the Plan.

6.4     *Curing or Waiving Default*. Any default of Debtors shall be deemed cured or waived by confirmation of this Plan.

6.5     *Lien Stripping*. Without limiting the foregoing, entry of an order confirming the Plan shall have the effect of vesting the real property identified in Sections **Error! Reference source not found.**-3.5 in Debtors free of all liens, claims and interests, including but not limited to the following:

6.5.1 The liens, claims and interest identified in Sections 3.4-3.5 shall be preserved, modified, released and satisfied on the terms stated in those Sections.

6.5.2 The Deed of Trust recorded May 27, 2005 in the records of the Maricopa County Recorder at 2005-0711358 in favor of Aegis Funding Corp. dba Aegis Home Equity and apparently the subject of an unrecorded assignment to Sovereign Bank, N.A. shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in the amount of $92,135.00, or in such other amount as may be allowed on any proof of claim which it may file.

6.5.3 The Deed of Trust recorded October 24, 2005 in the records of the Maricopa County Recorder at 2005-1594883 in favor of Household Realty Corporation and apparently the subject of an unrecorded assignment to _____ shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in the amount of $35,000.00, or in such other amount as may be allowed on any proof of claim which it may file.

6.5.4 The Judgment recorded January 13, 2009 in the records of the Maricopa County Recorder at 2009-0029706 by Capital One Bank (USA), NA, together with any proceedings in *Capital One Bank (USA), NA v. Harrison*, Maricopa County Superior Court No. TJ2009-060608 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.5 The Judgment recorded April 6, 2009 in the records of the Maricopa County Recorder at 2009-0303029 by CACH, LLC, together with any proceedings in *CASH, LLC v. Harrison*, Maricopa County Superior Court No. CV2008-026607 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.6 The Judgment recorded September 25, 2009 in the records of the Maricopa County Recorder at 2009-0891793 by Midland Funding, LLC, together with any proceedings in *Midland Funding, LLC v. Harrison*, Maricopa County Superior Court No. CV2009-012496 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.7 The Judgment recorded October 13, 2009 in the records of the Maricopa County Recorder at 2009-0945646 by Capital One Bank (USA), NA, together with any proceedings in *Capital One Bank (USA), NA v. Harrison*, Maricopa County Superior Court No. TJ2009-014088 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.8 The Judgment recorded November 25, 2009 in the records of the Maricopa County Recorder at 2009-1088519 by Midland Credit Management, Inc., together with any proceedings in *Midland Credit Management, Inc. v. Harrison*, Maricopa County Superior Court No. TJ2009-017502 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.9 The personal property identified in Debtors' schedules shall vest in Debtors free of all liens, claims and interests.

6.6     *Funding*. Payments and distributions under the Plan will be funded as provided in Article II.

6.7     *Source of Payments*. The income and property to be committed to the Plan shall be generated from Debtors' earnings.

6.8     *Post-Confirmation Management*. The post-confirmation management of Debtors shall remain in Debtors.

## VII. General Provisions

7.1     *Definitions and Rules of Construction*. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.2     *Effective date of Plan*. The effective date of this Plan shall be the date falling 30 days after the entry of an Order confirming this Chapter 11 Plan of Reorganization. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.3     *Severability*. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.4     *Binding Effect*. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.5     *Captions*. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.6     *Controlling Effect*. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Arizona govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.7     *Quarterly Fees and Reports*. Debtors shall continue to pay quarterly fees to the U.S. Trustee System until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding. Debtors shall continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of Reorganization. At such time, Debtors shall cease filing monthly operating reports and shall begin filing 90 day reports. These 90 day reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding.

7.8     *Retention of Jurisdiction*. The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objections to claims. The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of determining the allowability of any other claimed administrative expenses. The Court will also retain jurisdiction for the purpose of establishing bar dates and making a determination with respect to all disputed claims. Finally, the Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation, or consummation of the Plan and to implement and enforce the provisions of the Plan. Notwithstanding anything to the contrary contained herein, the Debtors shall not be bound by estoppels, the principles of res

judicata or collateral estoppel with respect to any term or provision contained herein in the event the Plan is not confirmed.

## VIII. Confirmation, Modification, Closing and Discharge

8.1 *Effect of Confirmation*. Confirmation substitutes the terms and obligations stated in this Plan for all preconfirmation claims and interests.

8.2 *Modification of Plan*. The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

8.3 The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

8.4 *Final Decree Closing Case*. Once all contested and adversary matters have concluded, and Debtors have commenced making all payments required to be made pursuant to their Plan of Reorganization, Debtors will move for a final decree closing the case. The order will provide that the case shall be reopened upon the Debtors' request for the entry of their discharge. The Debtors' request to reopen shall be made pursuant to 11 U.S.C. § 350, with notice to all parties, and shall be supported by evidence that they have made all of their Plan payments.

8.5 *Discharge of Debtors'*. Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtors shall be discharged from all unsecured debt on completion of all payments provided for by the Plan to unsecured creditors, and from each secured debt on compliance with the terms of the Plan with respect to that debt. Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

DATED this 21st day of May, 2013.

                Kelly G. Black, PLC

                /s/ Kelly G. Black
                Attorneys for Garrett Harrison and Kiresten Harrison
                By: Kelly G. Black, No. 016376

00001-001\Notice of Appearance.docx