The Law Offices of

# KELLY G. BLACK, plc

1152 E Greenway St, Ste 4
Mesa, AZ 85203-4360
P 480-639-6719
F 480-639-6819
kgb@kellygblacklaw.com
Attorneys for Garrett Harrison and Kiresten Harrison
By:     Kelly G. Black, No. 016376

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | **No.  2:11-bk-06877-GBN** |
| **Garrett Harrison and Kiresten Harrison,** | Chapter 11  Proceedings |
| Debtors | **Disclosure Statement** |
| | Assigned to: Honorable George B. Nielsen Jr. |

## I.     Purpose of This Disclosure Statement

You have received this disclosure statement ("Disclosure Statement") because you may have had or claimed a legal relationship with Garrett Wade  Harrison and Kiresten Kei Harrison, (the "Debtors"), who have filed a petition for relief under Chapter 11 of the Bankruptcy Code (the "Code").

Debtors have filed a Chapter 11 Plan of Reorganization (the "Plan"), which they will ask the bankruptcy judge to "confirm," or approve. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. This Disclosure Statement contains information about Debtors and describes their Chapter 11 Plan of Reorganization (the "Plan"). **Confirmation of the Plan may affect your rights. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

Debtors have mailed with this Disclosure Statement (1) a copy of the Order approving the Disclosure Statement and setting a hearing on confirmation and (2) one or more ballots. Ballots are provided because you may be entitled to vote on the Plan. You may also be entitled to file objections to the Plan. You must return ballots and file any objections by the deadline stated in the Order.

The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.

Debtors encourage you to **ACCEPT** the Plan by completing, signing, and returning the enclosed ballot(s).

## II.   Background

### A.   Description and History of the Debtors

The Debtors are individuals. Garrett Harrison was employed in hotel construction between 2007 and 2010. Because of the excessive travel and decreasing compensation, he found full time employment in Arizona in early 2011. He is employed with WalMart in a management-track position, and supplements his income with residential construction work. For some time, Kiresten Harrison has earned income from Kiresten's Home Décor. She recently began supplementing their income with office work.

### B.   Insider Payments

Debtors have paid no "insiders" as defined in Code §101(31) within the two years before the bankruptcy case was filed.

### C.   Management of the Debtors Before and During the Bankruptcy

Debtors have managed their own affairs both before and during the bankruptcy case, and propose to continue managing their affairs after confirmation.

### D.   Events Leading to Chapter 11 Filing

Reduction in Debtors' income between 2007 and early 2011 resulted in Debtors' inability to pay their debts as they came due.

### E.   Significant Events During the Bankruptcy Case

Debtors filed this case as a Chapter 13 case in March 2011. After the case was dismissed and reinstated, Debtors retained current counsel, then with Jackson White, PC to convert the case to Chapter 11 because the claims against them exceeded the debt limits. A conversion order was entered in November 2011, and Jackson White, P.C. was appointed as counsel for Debtors later that month.

During the bankruptcy case, Debtors have increased their income. Garrett Harrison makes about $600 per month more than at filing, and Kiresten has increased her income by about $1,000 per month. Expenses are relatively stable, although individual items have fluctuated. For example, auto insurance has increased by $80 per month.

### F.   Projected Recovery of Avoidable Transfers

Debtors have not identified any potential preference, fraudulent conveyance, or other avoidance actions, and do not intend to pursue such.

## III.   How the Plan Affects Claims

### A.   Claims, Interests, and Classes

The Plan affects all of Debtors' legal relationships. To understand how the Plan affects you, first determine the nature of your claim or interest.

*Claims and Interests.* Under the Bankruptcy Code (the "Code"), Debtors' creditors hold "claims." Owners of a debtor organization hold "equity interests"; individual debtors are treated as holders of "equity interests."

*Classes of Claims*. The Plan organizes most claims and equity interests in "classes" of similar claims or interests. Claims or interests within the same class receive the same treatment.

*Unclassified Priority Claims*. Some claims are not in classes, but receive priority treatment under the Code.

*Leases and Executory Contracts*. The Plan separately addresses leases or executory contracts with the Debtors.

Your claim may fit into one or more classes or priority groups, as illustrated by a common example: a $1,000 car loan secured by a car worth $500 would be classified as a $500 secured claim and a $500 unsecured claim.

You may locate descriptions of each class of claims and each group of unclassified priority claims in Part III of the Plan. Part IV of the Plan addresses leases and executory contracts.

**B.**   *Summary of and References to The Plan*

After you have determined the nature of your claim or interest, you may determine how it is affected by the Plan. Part II of the Plan provides that Debtors will commit $2,756.50 each month to the Plan for 120 months, plus additional payments on specified claims. Parts III and IV describe the treatment of each claim, lease, and executory contract.

Part VI describes the means for implementation of the Plan. Parts VII and VIII include general provisions and describe the effect of confirmation, closing and discharge.

The following chart shows, in dollars and cents, the amounts which Debtors project will be paid to each class or priority group under the Plan if it is confirmed and the time frame in which those amounts will be paid:

| Creditor | Estimated Payment | Estimated Interest | Months to Pay Off |
|---|---|---|---|
| Priority. UST's Fees<br><br>**Paid on effective date**<br><br>*Assumes case closure within one quarter | 325.00* | - | 1 |
| Priority. IRS<br><br>**Monthly pmts est 256.88**<br><br>*May be contested | 7,867.00* | 353.16 | 32 |
| Priority. ADOR<br><br>**If allowed in substantial amt, plan is infeasible**<br><br>*Will be contested | * | | |
| General Unsecured Creditors | 22,000 *pro rata* | - | 118 |

| | | | |
|---|---|---|---|
| **Paid pro rata share of $22,000** | | | |
| BONYM-BofA | | | |
| **Option 1** | 342,188.01 | 171,644.63 | 120 |
| **Option 2** | 342,188.01 | 230222.26 | 232 |
| Sossaman Estates HOA | 2,067.00 | - | 10 |

**Note that the above chart is a summary of Debtors' projections, and does not substitute for claims allowance or for the terms of the Plan. Be sure to read the Plan as well as this Disclosure Statement. Although this Disclosure Statement describes and summarizes the Plan, it is the Plan itself that will, if confirmed, establish your rights. The Plan itself is less than ten pages in length, and is incorporated herein by this reference.**

### C.   Allowance of Claims and Interests

To vote on the Plan or to receive a distribution under the Plan, your claim must be "allowed." Generally, a claim or equity interest is allowed if

- the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated; or

- the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest; or

- the Court, after notice and hearing, overrules the objection.

If you hold a claim or equity interest which is not allowed as discussed above, you may vote that claim or equity interest only if the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

Even if your claim is currently allowed, or is allowed for voting purposes, it may be disallowed for purposes of distribution. Part V of the Plan describes the manner in which claims will be allowed or disallowed.

### D.   Determining Right to Vote

If your claim is allowed, you are entitled to vote on the Plan if it is in an "impaired" class. Under Code § 1124, a class is generally considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

Part III of the Plan states whether each class is impaired. Debtors contend that holders of allowed claims in classes 3, 4 and 5 are entitled to cast a ballot accepting or rejecting the Plan.

In short, only holders of allowed claims in impaired classes are entitled to vote. Conversely, holders of the following types of claims and equity interests are not entitled to vote:

- claims and equity interests that have been disallowed by an order of the Court;

1    • other claims or equity interests that are not "allowed claims" or "allowed equity
       interests" (as discussed above), unless they have been "allowed" for voting
2      purposes.

3    • claims or equity interests in unimpaired classes;

4    • claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

5    • claims or equity interests in classes that do not receive or retain any value under
       the Plan; and
6
     • claims for administrative expenses.
7
8        **Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the
     Confirmation of the Plan.**

9        If your claim has been allowed in part as a secured claim and in part as an unsecured
     claim, or if you otherwise hold claims in multiple classes, you are entitled to accept or reject the
10   Plan in each capacity, and should cast one ballot for each claim.

11       *E.     How Votes Are Counted*

12       Each ballot is counted by class. A class of claims accepts the Plan if both of the following
     occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote,
13   cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar
     amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.
14
15       A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in
     amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

16   **IV.   Confirmation Requirements and Procedures**

17       At the hearing on confirmation, set in the Order served herewith, Debtors intend to ask
     the Court to confirm the Plan. To be confirmed, the Plan must be proposed in good faith and
18   must meet the requirements listed in §§ 1129(a) or (b) of the Code. Some—but not all—of the
     requirements for confirmation are discussed in greater detail below.
19
         *A.     Consenting Impaired Class*
20
21       If impaired classes exist, the Court cannot confirm the Plan unless at least one impaired
     class of creditors has accepted the Plan without counting the votes of any insiders within that
22   class. This is commonly referred to as the "consenting impaired class" requirement.

         *B.     Consensual or Cram Down Confirmation*
23
24       The Court may confirm the Plan under § 1129(a) if, in addition to the required consenting
     impaired class, all impaired classes have voted to accept the Plan. This is commonly referred to
25   as a "consensual plan."

26       Alternatively, the Court may confirm the Plan under § 1129(b) of the Code despite the
     rejection by one or more impaired classes if the nonaccepting classes are treated in the manner
27   prescribed in that section. A plan that binds nonaccepting classes is commonly referred to as a
     "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity
     interests if it meets all the requirements for consensual confirmation except the acceptance by all
28

impaired classes, if it does not "discriminate unfairly," and if it is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

### C.   *Liquidation Analysis / Assets and Financial Condition*

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The following liquidation analysis shows what would be available to creditors in a chapter 7 liquidation:

| Assets: | Value | Less Liens and Exemptions | Avail. to Estate |
|---|---|---|---|
| Schedule A | $276,100.00 | $430,886.61 | $0.00 |
| Schedule B | $20,870.86 | $19,700.11 | $1,170.75 |
| Less: Administrative Costs | | $2,087.09 | |
| Available to General Unsecured Creditors | | | $0.00 |

The liquidation analysis depends in part upon Debtors' assets and their values. The identity and fair market value of the estate's assets are listed in Exhibit B, except that Debtors now value their residence at $276,100.00.

The Debtor's most post-petition operating report is attached hereto as Exhibit C.

### D.   *Feasibility*

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### 1.   *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtors will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

#### 2.   *Ability to Make Future Plan Payments And Operate Without Further Reorganization; Projected Disposable Income*

Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments. Also, Debtors may be required to show that the value of the property

to be distributed under the plan is not less than their projected disposable income over five years or the life of the plan, whichever is longer.

| | | |
|---|---|---|
| Wal-Mart (Net) | $ | 3,575.00 |
| Overland | $ | 1,600.00 |
| KH Décor | $ | 500.00 |
| Kiresten Office Work | $ | 1,000.00 |
| NET INCOME | | $ 6,675.00 |

| | | |
|---|---|---|
| Electrical (Equal Pay) (SRP) | $ | 400.00 |
| Water (OC Water) | $ | 125.00 |
| Cable / Telephone (COX) | $ | 183.00 |
| Gas (SW Gas) | $ | 50.00 |
| HOA (Sossaman Estates) | $ | 87.50 |
| Cell Phones (AT&T) | $ | 263.00 |
| Auto Insurance (Progressive) | $ | 283.00 |
| Life Insurance | $ | 60.00 |
| Auto Fuel | $ | 606.67 |
| Auto Repairs | $ | 50.00 |
| Food | $ | 600.00 |
| Tithing | $ | 667.50 |

| | | |
|---|---|---|
| BK Payments | $ | 2,756.50 |
| HOA and Admin Expenses | $ | 533.50 |
| | | $ 6,665.67 |

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

3. Tax Consequences

Entry of discharge of Debtors' indebtedness will cause the reduction of certain tax attributes, including basis, resulting in additional capital gains on the disposition of property affected by the discharge. **Creditors and Equity Interest Holders Concerned with How the**

**Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**

    **E.**    *Risk Factors*

    Debtors have identified the following risk factor: while Debtors are currently employed and healthy, and expect to remain so, neither employment nor continued health is guaranteed.

    **F.**    *Solicitation of Vote*

    Upon your review of the foregoing information, and the terms of the Plan attached hereto, Debtors encourage you to ACCEPT the Plan by completing, signing, and returning the enclosed ballot(s).

    DATED this 21st day of May, 2013.

Kelly G. Black, PLC

/s/ Kelly G. Black
Attorneys for Garrett Harrison and Kiresten Harrison
By: Kelly G. Black, No. 016376

00001-001\Notice of Appearance.docx

# Exhibit A

The Law Offices of

# KELLY G. BLACK, PLC

1152 E Greenway St, Ste 4
Mesa, AZ 85203-4360
P 480-639-6719
F 480-639-6819
kgb@kellygblacklaw.com
Attorneys for Garrett Harrison and Kiresten Harrison
By:    Kelly G. Black, No. 016376

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | **No. 2:11-bk-06877-GBN** |
| **Garrett Harrison and Kiresten Harrison,** | Chapter 11  Proceedings |
| Debtors | **Chapter 11 Plan of Reorganization** |
| | Assigned to: Honorable George B. Nielsen Jr. |

## I.    Summary

1.1     This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankrutpcy Code (the "Code") proposes to pay creditors of Debtors Garrett Wade  Harrison and Kiresten Kei Harrison, (the "Debtors," or "Debtors-in-Possession"), from future income.

1.2     All creditors and equity security holders should refer to the provisions of this Plan for information regarding the precise treatment of their claims. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## II.    Commitment and Payment of Income and Property

2.1     *Regular Income Committed.* From future income or other sources, Debtors shall commit to the Plan the monthly sum of $2,756.50 beginning on the 1st day of the first month following the effective date of this Plan and continuing for 120 months after the effective date. After month 120, Debtors shall commit to the Plan the monthly sums required to maintain the payments provided under Section 3.4 if that claim remains unsatisfied.

2.2     *Property Committed.* Debtors shall also commit to the Plan a sum sufficient to make the payments required by Sections 3.1 and 3.5.

2.3     *Commitment of Additional Property.* At any time, Debtors may pre-pay the amounts committed under Sections 2.1 and 2.2 from any source, including future income and property liquidated for distribution.

2.4     *Priority of Payments.* Except as this Plan expressly states provides to the contrary, the Debtors will apply any income or property committed to the Plan *first* to satisfy any payment described in Articles III and IV as due on the effective date; *second* to satisfy any minimum payment described in Articles III and IV as falling due after the effective date; *third* to satisfy

any remaining cure obligation described in Article IV; and *fourth* to satisfy in full all remaining claims or interests in the order in which they appear in Articles III and IV.

## III.    Treatment of Classes of Claims and of Unclassified Claims

**3.1    Unclassified Priority Group 1.**    Each administrative expense claim, to the extent allowed under § 503(b) of the Code, together with any fees and charges assessed against the estate under Chapter 123 of title 28, with priority under § 507(a)(2) of the Code. Under the terms of § 1123(a)(1), such claims are not in classes. Claims with this priority group may include those described below:

3.1.1    *United States Trustee Fees*. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

3.1.2    *Preserving the Estate*. Claims for the actual, necessary costs and expenses of preserving the estate allowed under § 503(b)(1)(A), which may include but are not limited to:

       i.     certain post-petition compensation and labor awards;
      ii.    certain post-petition torts by the debtors-in-possession or trustee;
    iii.    certain environmental claims;
    iv.    certain post-petition unsecured debt; and
     v.    certain post-petition obligations related to leases and executory contracts.

3.1.3    *Certain Post-Petition Taxes*. Claims for certain post-petition taxes and penalties described in § 503(b)(1)(B-D). Such claims may include income taxes generated post-petition from services or from property of the estate, and may also include property taxes for the tax year following the year in which the bankruptcy petition was filed.

3.1.4    *Compensation of Officers and Professionals*. Claims for compensation and reimbursement of officers of the estate or professionals employed and awarded under § 330(a) of the Code, or otherwise awarded under § 503(b)(2-6,8).

3.1.5    *Certain Rejection Damages*. Certain claims by landlords under nonresidential real property leases rejected after previous assumption and allowed under § 503(b)(7).

3.1.6    *Certain Goods*.  Claims for the value of certain goods received by the Debtors within 20 days before the Petition Date and allowed under § 503(b)(9).

3.1.7    *FRB Loans*. Unsecured claims of a Federal reserve bank, to the extent allowed with priority under § 507(b)(2).

The holder of the following claims within this group will be paid in full on the effective date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors: (1) United States Trustees Fees; (2) Claims for post-petition taxes and penalties described in § 503(b)(1)(B-D); and (3) Compensation and reimbursement of Jackson White, P.C. and Kelly G. Black, PLC. No other claim within this group will be paid and, except as provided in § 503(b)(1)(D), no claim within this group will be paid unless a motion and notice for allowance of the claim is filed and served on or before the effective date and the claim is thereafter allowed by the court.

Claims within this group are not entitled to cast a ballot.

3.2    **Unsecured Priority Group 2.**    *Priority Tax Claims*. Each unsecured tax claim of a governmental unit, to the extent allowed with priority under § 507(a)(8).

The holder of a claim allowed within this group will be paid the full amount of the allowed claim, with interest from the date the claim arose at the rate required by 11 U.S.C. § 511, in cash payments beginning the thirtieth day after satisfaction of all claims with higher priority under this Plan and amortized in equal monthly installment payments through the fifth anniversary of the date of the order for relief.

Claims with this priority include:

3.2.1    Proof of Claim 5, filed by the Internal Revenue Service. The validity of this claim is not admitted, and may be the subject of a claims objection and motion under 11 U.S.C. § 505. If allowed as filed, the principal portion of the priority claim, in the sum of $7,867.00, will be paid with interest at the fixed rate of 3.22% per annum in 32 monthly installments of $256.88. The interest portion of the priority claim, in the sum of $1,117.08, will be paid without interest in 32 monthly installments of $34.91. Payments shall begin by July 16, 2013. Payments accruing before the effective date of the Plan shall be made on the effective date of the Plan.

3.2.2    Proof of Claim 2, filed by the Arizona Department of Revenue. The validity of this claim is not admitted, and will be the subject of a claims objection and motion under 11 U.S.C. § 505. If allowed as filed, the Plan is not feasible. If allowed in an amount which makes the Plan feasible, the priority claim will be paid with interest at the fixed rate of 3.00% per annum in cash payments beginning the thirtieth day after satisfaction of all claims with higher priority under this Plan and amortized in equal monthly installment payments through the fifth anniversary of the date of the order for relief.

3.3    **Class 3.**    *General Unsecured Non-Priority Claims*. All other unsecured claims allowed under § 502 of the Code.

The holder of a claim allowed within this class will be paid a pro rata share of $22,000.00, in cash payments beginning the thirtieth day after satisfaction of all unsecured claims with higher priority under this Plan and divided in equal monthly installment payments continuing through month 120 after the effective date.

This class is impaired and is entitled to cast a ballot.

3.4    **Class 4.**    The claim of The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificate Holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2004-12, Mortgage Pass Through Certificates, Series 2004-12, filed as Proof of Claim 22 and scheduled under the name "Bac Home Loans Servici" at Docket 13, p. 9, account number xxxx6663, secured by a deed of trust recorded with the Maricopa County Recorder on April 22, 2004 at 2004-0433069, with the related assignment recorded March 14, 2012 at 2012-0212519, against the following described property:

18525 E. Purple Sage Drive
Queen Creek, AZ 85242,

more fully described as:

Lot 96, Parcel G at Sossaman Estates, according to Book 585 of Maps, Page 1, records of Maricopa County, Arizona

APN:  304-68-888,

to the extent allowed as a secured claim.

Debtors value the collateral at $264,300.00.

This claim and lien shall be treated as follows:

**Option 1**

If the holder of the Class 4 claim accepts this plan and fails to elect Option 2, the treatment set forth herein shall apply.

*Allowance of Claim.* The claim will be allowed as a secured claim in the amount of $342,188.01. The secured claim shall consist of the following elements:

1. Principal in the amount of $298,905.73, with interest thereon from May 1, 2013 at the fixed rate of 4.5% per annum through January 1, 2015 and at the rate of 5% from January 1, 2015. Debtors shall make payments in the following amounts:

   a. $1,835.64 per month beginning June 1, 2013 and continuing through and including January 1, 2015;

   b. $1,912,65 per month beginning February 1, 2015 and continuing for 99 months through and including April 1, 2023; and

   c. A final payment in the aum of $195,804.81 on May 1, 2023,

   unless earlier paid.

   These payments shall be applied first to interest accruing on principal from May 1, 2013 and then to principal.

2. Ongoing escrow payments in a sum sufficient to satisfy insurance and property taxes payable after May 1, 2013; until the parties agree or the Court determines otherwise, these escrow payments shall be in the monthly amount of $405.67;

3. Payment of amounts necessary to cure defaults arising before May 1, 2013 which shall be allowed in the following amounts:

   a. Escrow payments accrued from February 1, 2011 to May 1, 2013 in the sum of $14,135.24;

   b. Interest accrued from February 1, 2011 through May 1, 2013 in the sum of $29,147.04; and

   c. Fees asserted in the proof of claim in the sum of $2,405.47 shall be disallowed.

   Debtors shall pay these sums on or before May 1, 2023.

**Option 2**

If the holder of the Class 4 claim fails to accept this plan, or accepts this plan and elects this Option 2, the treatment set forth herein shall apply.

*Allowance of Claim.* The claim will be allowed as a secured claim in the amount of $342,188.01. The secured claim shall consist of the following elements:

4. Principal in the amount of $298,905.73, with interest thereon from May 1, 2013 at the fixed rate of 4.5% per annum through January 1, 2015 and at the rate of 5% from January 1, 2015. Debtors shall resume making monthly payments beginning June 1, 2013 in the amounts currently required by the loan documents:

   a. $1,729.84 through and including January 1, 2015;

   b. $1,802.42 beginning February 1, 2015 and continuing until paid in full on or before the maturity date, May 1, 2034.

   Debtors shall increase these payments by $105.80 and $110.23 respectively to reinstate the maturity date. The combined principal and interest payments Debtors shall make each month beginning June 1, 2013 as as follows:

   c. $1,835.64 through and including January 1, 2015;

   d. 1,912,65 beginning February 1, 2015 and continuing until paid in full on or before the maturity date, May 1, 2034.

   These payments shall be applied first to interest accruing on principal from May 1, 2013 and then to principal.

5. Ongoing escrow payments in a sum sufficient to satisfy insurance and property taxes payable after May 1, 2013; until the parties agree or the Court determines otherwise, these escrow payments shall be in the monthly amount of $405.67;

6. Payment of amounts necessary to cure defaults arising before May 1, 2013 which shall be allowed in the following amounts:

   a. Escrow payments accrued from February 1, 2011 to May 1, 2013 in the sum of $14,135.24;

   b. Interest accrued from February 1, 2011 through May 1, 2013 in the sum of $29,147.04; and

   c. Fees asserted in the proof of claim in the sum of $2,405.47 shall be disallowed.

   Debtors shall pay these sums by making monthly cure payment in the amount of $181.30, which shall be applied first to cure escrow payments, then accrued interest, then any fees which may be allowed.

**Either Option 1 or Option 2**

The following shall apply under either Option 1 or Option 2:

*Lien.* Until payments are completed under this Plan, this class shall maintain its pre-petition lien, limited to the amount of the allowed secured claim. Upon payment in full of the payments provided for this class, Debtors shall be entitled to a release of all pre-petition, post-petition and post-confirmation liens.

*Default.* A default with respect to this class shall not constitute a default under the plan with respect to any other class or party in interest.

*Pre-Payment.* Debtors will have the right to prepay this secured claim without penalty at any time.

This class is impaired and is entitled to cast a ballot.

3.5 **Class 5.** The claim of Sossaman Estates Homeowners Association, filed as Proof of Claim 9 and scheduled under the name "Sossaman Estates" at Docket 13, p. 9, secured by a homeowners association lien against the property described in Section 3.4, to the extent allowed as a secured claim. A Notice and Claim of Lien was recorded August 13, 2007 in the records of the Maricopa County Recorder at 2007-0907300; the notice references a Declaration of Covenants, Conditions and Restrictions recorded September 11, 2001 at 2001-0836393 (the "CC&Rs").

Debtors value the collateral at $264,300.00.

This claim and lien shall be treated as follows:

*Allowance of Claim.* The holder of this claim will be allowed no pre-petition secured claim, a pre-petition unsecured claim in the amount of $9,217.61, a secured post-petition claim in the amount of $2,067.00 through May 31, 2013, and such further secured post-petition claim for periods beginning June 1, 2013 as may be established by stipulation or motion filed before the effective date, less payments made after the date this plan is filed. The treatment of the unsecured claim is not provided for in this class, but in the section addressing unsecured claims.

*Pre-Petition Lien.* The lien will be released with respect to pre-petition claims only. The Lis Pendens recorded June 28, 2010 in the records of the Maricopa County Recorder at 2010-0544901 by Sossaman Estates Homeowners Association, together with any proceedings in *Sossaman Estates Homeowners Association v. Harrison*, Maricopa County Superior Court No. CV2010-020330 shall be void and of no further effect.

*Post-Petition Lien.* The holder of this claim will retain any lien rights it may have under the with respect to the allowed secured post-petition claim. Allowed post-petition claims accruing on or before the effective date of the plan will be paid in ten monthly installments in the minimum sum of $206.70 beginning thirty days after the effective date until paid in full.

This class is impaired, and a holder of a claim within this class is entitled to cast a ballot. In the event that the pre-petition claim is found to be wholly or partially secured, the secured claim and lien shall be treated in the manner provided in paragraph 3.4.

3.6 **Class 6.** *Debtors' Interests.* The interests of the individual Debtors in property of the estate.

Except as specifically stated in the Plan, Debtors shall retain all of their legal and equitable interests in exempt and non-exempt assets of this estate, including income, free and clear of all claims and interests. All estate property shall vest in Debtors at confirmation.

# IV. Assumption and Rejection of Leases and Executory Contracts

4.1 *Assumed Executory Contracts and Unexpired Leases.* The Debtors assume the following executory contracts and/or unexpired leases effective upon the effective date: None.

4.2    Upon the effective date of this Plan, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed in this Article IV, unless separately assumed on motion filed after the filing of this Plan and before the date of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## V.    Allowance and Disallowance of Claims

5.1    *Disputed Claim*. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

5.2    *Delay of Distribution on a Disputed Claim*.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3    *Settlement of Disputed Claims*.  The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.4    *Administrative and Lease Rejection Claims*. Administrative claims are governed by Section 3.4 of this Plan. Claims relating to rejected leases are governed by Section 4.2 of this Plan.

5.5    *Allowance and Disallowance of Secured Claims*. Confirmation of the Plan will result in the allowance and disallowance of specific claims of secured claims as provided in Sections 3.4-3.5. If not there allowed, secured claims will be disallowed and any related lien released as provided in Article VI. **You are advised to review these provisions to identify your claim and determine whether and how it will be allowed and treated under the Plan.**

## VI.    Means for Implementation of the Plan

6.1    *Retention of Property of the Estate*. Except as specifically stated in the Plan, Debtors shall retain all of their legal and equitable interests in exempt and non-exempt assets of this estate, including income, free and clear of all claims and interests. For purposes of § 1141(c), all estate property shall be deemed "dealt with by the plan." All estate property shall vest in Debtors at confirmation.

6.2    *Transfer of Property of the Estate*. After confirmation, Debtors may transfer property of the estate. Each transfer shall be subject to the Debtors' respective obligations under the allowed secured claims and liens, as modified in this Plan.

6.3    *Satisfaction and Modification of Liens*. Liens against property of the estate shall be satisfied and modified on Debtors' compliance with the relevant terms of Articles III and IV. Any lien which is wholly unsecured shall be deemed released upon confirmation of the Plan.

6.4    *Curing or Waiving Default*. Any default of Debtors shall be deemed cured or waived by confirmation of this Plan.

6.5    *Lien Stripping*. Without limiting the foregoing, entry of an order confirming the Plan shall have the effect of vesting the real property identified in Sections **Error! Reference source not found.**-3.5 in Debtors free of all liens, claims and interests, including but not limited to the following:

6.5.1    The liens, claims and interest identified in Sections 3.4-3.5 shall be preserved, modified, released and satisfied on the terms stated in those Sections.

6.5.2    The Deed of Trust recorded May 27, 2005 in the records of the Maricopa County Recorder at 2005-0711358 in favor of Aegis Funding Corp. dba Aegis Home Equity and apparently the subject of an unrecorded assignment to Sovereign Bank, N.A. shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in the amount of $92,135.00, or in such other amount as may be allowed on any proof of claim which it may file.

6.5.3    The Deed of Trust recorded October 24, 2005 in the records of the Maricopa County Recorder at 2005-1594883 in favor of Household Realty Corporation and apparently the subject of an unrecorded assignment to _____ shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in the amount of $35,000.00, or in such other amount as may be allowed on any proof of claim which it may file.

6.5.4    The Judgment recorded January 13, 2009 in the records of the Maricopa County Recorder at 2009-0029706 by Capital One Bank (USA), NA, together with any proceedings in *Capital One Bank (USA), NA v. Harrison*, Maricopa County Superior Court No. TJ2009-060608 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.5    The Judgment recorded April 6, 2009 in the records of the Maricopa County Recorder at 2009-0303029 by CACH, LLC, together with any proceedings in *CASH, LLC v. Harrison*, Maricopa County Superior Court No. CV2008-026607 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.6    The Judgment recorded September 25, 2009 in the records of the Maricopa County Recorder at 2009-0891793 by Midland Funding, LLC, together with any proceedings in *Midland Funding, LLC v. Harrison*, Maricopa County Superior Court No. CV2009-012496 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.7    The Judgment recorded October 13, 2009 in the records of the Maricopa County Recorder at 2009-0945646 by Capital One Bank (USA), NA, together with any proceedings in *Capital One Bank (USA), NA v. Harrison*, Maricopa County Superior Court No. TJ2009-014088 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.8    The Judgment recorded November 25, 2009 in the records of the Maricopa County Recorder at 2009-1088519 by Midland Credit Management, Inc., together with any proceedings in *Midland Credit Management, Inc. v. Harrison*, Maricopa County Superior Court No. TJ2009-017502 shall be void and of no further effect. The holder of this claim shall instead be allowed an unsecured claim in such amount as may be allowed on any proof of claim which it may file.

6.5.9    The personal property identified in Debtors' schedules shall vest in Debtors free of all liens, claims and interests.

6.6 *Funding*. Payments and distributions under the Plan will be funded as provided in Article II.

6.7 *Source of Payments*. The income and property to be committed to the Plan shall be generated from Debtors' earnings.

6.8 *Post-Confirmation Management*. The post-confirmation management of Debtors shall remain in Debtors.

## VII. General Provisions

7.1 *Definitions and Rules of Construction*. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.2 *Effective date of Plan*. The effective date of this Plan shall be the date falling 30 days after the entry of an Order confirming this Chapter 11 Plan of Reorganization. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.3 *Severability*. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.4 *Binding Effect*. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.5 *Captions*. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.6 *Controlling Effect*. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Arizona govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.7 *Quarterly Fees and Reports*. Debtors shall continue to pay quarterly fees to the U.S. Trustee System until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding. Debtors shall continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of Reorganization. At such time, Debtors shall cease filing monthly operating reports and shall begin filing 90 day reports. These 90 day reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding.

7.8 *Retention of Jurisdiction*. The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objections to claims. The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of determining the allowability of any other claimed administrative expenses. The Court will also retain jurisdiction for the purpose of establishing bar dates and making a determination with respect to all disputed claims. Finally, the Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation, or consummation of the Plan and to implement and enforce the provisions of the Plan. Notwithstanding anything to the contrary contained herein, the Debtors shall not be bound by estoppels, the principles of res

judicata or collateral estoppel with respect to any term or provision contained herein in the event the Plan is not confirmed.

## VIII. Confirmation, Modification, Closing and Discharge

8.1     *Effect of Confirmation*.  Confirmation substitutes the terms and obligations stated in this Plan for all preconfirmation claims and interests.

8.2     *Modification of Plan*.  The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

8.3     The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

8.4     *Final Decree Closing Case*.  Once all contested and adversary matters have concluded, and Debtors have commenced making all payments required to be made pursuant to their Plan of Reorganization, Debtors will move for a final decree closing the case.  The order will provide that the case shall be reopened upon the Debtors' request for the entry of their discharge.  The Debtors' request to reopen shall be made pursuant to 11 U.S.C. § 350, with notice to all parties, and shall be supported by evidence that they have made all of their Plan payments.

8.5     *Discharge of Debtors'*. Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.  Debtors shall be discharged from all unsecured debt on completion of all payments provided for by the Plan to unsecured creditors, and from each secured debt on compliance with the terms of the Plan with respect to that debt. Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

DATED this 21st day of May, 2013.

Kelly G. Black, PLC


/s/ Kelly G. Black
Attorneys for Garrett Harrison and Kiresten Harrison
By:  Kelly G. Black, No. 016376

---
00001-001\Notice of Appearance.docx

# Exhibit B

In re    **Garrett Wade Harrison,**                                    Case No.   **2:11-bk-06877**

        **Kiresten Kei Harrison**

                                    Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **18525 E. Purple Sage Drive**<br>**Queen Creek, AZ 85242** | **Fee simple** | **C** | **234,980.00** | **430,886.61** |

|  | | |
|---|---|---|
| Sub-Total > | **234,980.00** | (Total of this page) |
| Total > | **234,980.00** | |

  **0**    continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

In re **Garrett Wade Harrison,**
    **Kiresten Kei Harrison**

Case No.   __2:11-bk-06877__

                     Debtors

# SCHEDULE B - PERSONAL PROPERTY - AMENDED

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.   Cash on hand | X | | | |
| 2.   Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Regions Bank** **Checking Account** **Account Number: 2504** **(This account has a negative balance of $-111.02)** | **C** | 0.00 |
| | | **US Bank** **Checking Account** **Account Number: 8785** | **C** | 157.21 |
| | | **US Bank** **Checking Account** **Account Number: 8777** | **C** | 186.55 |
| | | **Bank of America** **Checking Account** **Account Number: 4339** | **C** | 6.48 |
| | | **Bank of America** **Savings Account** **Account Number: 0274** | **C** | 6.51 |
| | | **US Bank** **Savings Account** **(This account has a $0.00 balance)** | **C** | 0.00 |
| 3.   Security deposits with public utilities, telephone companies, landlords, and others. | | **Security Deposit with SRP** | **C** | 600.00 |
| 4.   Household goods and furnishings, including audio, video, and computer equipment. | | **Misc. Household Goods and Furnishings** **Please See Attached Inventory** | **C** | 5,605.00 |
| 5.   Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |

|  |  |
|---|---|
| Sub-Total > | 6,561.75 |
| (Total of this page) | |

  __3__   continuation sheets attached to the Schedule of Personal Property

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

In re   **Garrett Wade Harrison,**         Case No.   **2:11-bk-06877**
      **Kiresten Kei Harrison**
                                                        Debtors

# SCHEDULE B - PERSONAL PROPERTY - AMENDED
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 6. Wearing apparel. | | **Misc. Wearing Apparel** | **C** | **1,000.00** |
| 7. Furs and jewelry. | | **Two Wedding Bands and Engagement Ring** | **C** | **2,000.00** |
| | | **Two Watches** | **C** | **200.00** |
| 8. Firearms and sports, photographic, and other hobby equipment. | | **Firearm: Ruger 10-22** | **C** | **150.00** |
| | | **Firearm: Mossburg 500 Shotgun** | **C** | **150.00** |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **Term Life Insurance Policy with Penn Mutual - Debtor** | **C** | **0.00** |
| | | **Term Life Insurance Policy with Penn Mutual - Joint Debtor** | **W** | **0.00** |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | **Retirement Savings Plan with Pinnacle West Capital Corporation - Debtor** | **H** | **9.11** |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |

|  | Sub-Total > | **3,509.11** |
|---|---|---|
| | (Total of this page) | |

Sheet  **1**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

In re   **Garrett Wade Harrison,**                                            Case No.   **2:11-bk-06877**
         **Kiresten Kei Harrison**

Debtors ,

# SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2002 GMC Yukon** **Mileage: 106,000** **Condition: Fair** **Location: 18525 E. Purple Sage Drive, Queen Creek AZ 85142** | C | 7,000.00 |
| | | **1987 Jeep Grand Wagoneer** **Mileage: 138.000** **Condition: Poor/Fair** **Location: 18525 E. Purple Sage Drive, Queen Creek AZ 85142** | C | 900.00 |
| | | **2005 Honda 650TRX** | C | 2,800.00 |

Sub-Total >       10,700.00<br>(Total of this page)

Sheet  **2**  of  **3**  continuation sheets attached
to the Schedule of Personal Property

In re **Garrett Wade Harrison,**
**Kiresten Kei Harrison**

Case No. __2:11-bk-06877__

Debtors ,

# SCHEDULE B - PERSONAL PROPERTY - AMENDED
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | **1951 Chevrolet Pickup (In Parts)** | **C** | **100.00** |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Sub-Total > **100.00**
(Total of this page)

Total > **20,870.86**

(Report also on Summary of Schedules)

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

| | 1 | 2 | 3 | 4 | 5 | |
|---|---|---|---|---|---|---|
| Mirror(s) | | | 40 | | | |
| Lamp(s) | | | | | | |
| Vanity(s) | | | 50 | | | |
| Radio(s) | 15 | 15 | 15 | 10 | | |
| Television(s) | | | | | 35 | |
| Stereo(s) | | | | | | |
| VCR/DVD Player(s) | | | | | 10 | |
| Computer(s) | | | | | | |
| Other: | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total: | |

Kitchen
Description of Property

| | Value of each item | | | | | Total Value |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | |
| Table(s) | 150 | | | | | |
| Chair(s) | 100 | | | | | |
| Microwave(s) | 100 | | | | | |
| Refrigerator(s) | 220 | | | | | |
| Deep Freezer(s) | 100 | | | | | |
| Dishwasher(s) | 100 | | | | | |
| Washing Machine(s) | 50 | | | | | |
| Dryer(s) | 50 | | | | | |
| Stove(s) | 200 | | | | | |
| Dishes | 50 | | | | | |
| Cookware | 50 | | | | | |
| Other: | 50 | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total: | |

Other Rooms (Hallways,Bathrooms,Garage,Attic,Basement,Shed, etc.
Description of Property

| | Value of each item | | | | | Total Value |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | |
| Computer(s) | 100 | 100 | 75 | | | |
| Radio(s) | | | | | | |
| Stereo(s) | | | | | | |
| Desk(s) | 200 | | | | | |
| Chair(s) | 40 | | | | | |
| Game Table(s) | | | | | | |
| Sewing Machine(s) | 40 | | | | | |
| Vacuum Cleaner(s) | 40 | | | | | |
| Iron(s) | 10 | | | | | |
| Camera(s) | 200 | | | | | |
| Air Conditioner(s) | | | | | | |
| Tool(s) | 300 | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Power Tool(s) | 300 | | | | | |
| Lawn Mower(s) | 50 | | | | | |
| Other: | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total: | |

Total Value of all Household Goods  5605.00

Date _____4/1/2011_____    Signature _____

Debtor

Date _____4/1/2011_____    Signature _____

Joint Debtor

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

Best Case Bankruptcy

# United States Bankruptcy Court
### District of Arizona

In re _GARRETT & KIRESTON HARRISON_
Debtor(s)

Case No. _____
Chapter _13_

### HOUSEHOLD GOODS SHEET

Joint filings are entitled to $8,000 Arizona state exemptions. Single Filings are entitled to $4,000 Arizona state exemptions

**Living Room**
Description of Property

| | 1 | 2 | 3 | 4 | 5 | Total Value |
|---|---|---|---|---|---|---|
| Couch(es) | 75 | 75 | 50 | 50 | 50 | 225 |
| Bookcase(s) | 40 | 30 | 20 | | | |
| Desk(s) | 40 | | | | | |
| Chair(s) | 75 | 20 | | | | |
| Table(s) | 40 | 40 | | | | |
| Lamp(s) | 15 | | | | | |
| Radio(s) | | | | | | |
| Television(s) | 250 | 75 | 40 | | | |
| Stereo(s) | | | | | | |
| VCR/DVD Player(s) | 20 | 20 | | | | |
| Other: | 125 | 45 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total: | |

**Dining Room**
Description of Property

| | 1 | 2 | 3 | 4 | 5 | Total Value |
|---|---|---|---|---|---|---|
| Table(s) | 200 | | | | | |
| Chair(s) | 200 | | | | | |
| Lamp(s) | | | | | | |
| China Closet(s) | | | | | | |
| China | 75 | | | | | |
| Silverware | | | | | | |
| Other: | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total: | |

**Bedrooms**
Description of Property

| | 1 | 2 | 3 | 4 | 5 | Total Value |
|---|---|---|---|---|---|---|
| Bed(s) | 75 | 75 | 75 | 75 | 75 | |
| Chair(s) | 75 | 15 | 15 | 15 | | |
| Dresser(s) | 50 | 65 | 65 | 65 | 50 | |
| Chest(s) of Drawers | 50 | | 50 | | | |
| Desk(s) | | | 25 | 75 | | |

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

Best Case Bankruptcy

# Exhibit C

Most recent operating report will be attached here
after approval of the disclosure statement